**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| JOSEPH COLES, | ) | CASE NO:    1:10-cv-0525 |
| | ) | |
| Plaintiff, | ) | JUDGE OLIVER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | NANCY A. VECCHIARELLI |
| KEITH SMITH, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2.

Petitioner, Joseph Coles, ("Coles"), challenges the constitutionality of his conviction in

the case of *State v. Coles*, Case No. CR 478823-B (Cuyahoga County 2006).  Coles

filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on March 11,

2010 in the United States District Court for the Northern District of Ohio.  For the

reasons set forth below, Coles' petition should be **GRANTED** in part with respect to

Coles' first ground for relief.  The state of Ohio should vacate 37 of the 43 counts of

rape of which Coles was convicted, or this court should grant the writ.

I

The state appellate court hearing Coles' direct appeal found the follow facts to be

relevant to his case:

{¶ 2} In 2006, Coles was charged in a 242-count indictment with rape, kidnapping, gross sexual imposition ("GSI"), and child endangering in connection with the molestation of his stepdaughter, "S.D."  The first 111 counts involved a time frame of January 8, 1998 through January 7, 2001, when S.D. was under the age of thirteen, and charged Coles with 37 counts of kidnapping with sexual motivation specifications, 37 counts of rape of a child under thirteen years of age, and 37 counts of GSI of a child under the age of thirteen.  The remaining counts specified a range between January 8, 2001 through January 5, 2004.  As to that time, Coles was charged with 43 counts of kidnapping with sexual motivation specifications, 43 counts of rape, 43 counts of GSI, and two counts of child endangering.  Coles' codefendant was S.D.'s mother, Dawn Coles ("Dawn"), who later pled guilty to endangering children and obstructing justice and was sentenced to three years in prison.

{¶ 3} In June 2006, defense counsel moved for a more specific bill of particulars.  The trial court did not rule on the motion, and the State never provided counsel with an amended bill of particulars.  The matter proceeded to a jury trial.  Dawn pled guilty on the day of trial and agreed to testify against Coles.  The State presented several witnesses, including S.D., Dawn, social workers, medical personnel, and two detectives. At the close of the State's case, the State moved to amend the indictments to reflect numerous date changes and dismiss 40 counts of kidnapping.  The defense also called several witnesses to testify, including Coles.

{¶ 4} The following evidence was adduced at trial.

{¶ 5} S.D. was born on January 8, 1988.  When she was six years old, her mother began dating Coles.  S.D. testified that Coles lived with her and her mom in Lakewood and, in April 1998, Dawn gave birth to a son.  S.D. testified that she was ten years old when Coles began to molest her.  She and Coles were watching television when he touched her vagina.  She went to bed and awoke to him touching her vagina.  She told him to go away and he did.  S.D. testified that the same scenario occurred "every once in awhile" thereafter.  S.D. testified that she told her mother about the incident a week after it occurred.  Dawn called social services, which developed a safety plan and "closed" the case.  S.D. went to live with her grandparents for the rest of the summer.  When she returned to the house, S.D. testified that she felt safe because her mother never left her alone with Coles.

{¶ 6} S.D. remembered that the abuse recommenced in the summer of her sixth-grade year, or 2000, when she, her mother, and her younger brother moved to West 114th Street in Cleveland.  S.D. testified that while her mother was at work, Coles would have sex with S.D. in his bedroom or in the living room.  She testified that she could not remember details, only "him sticking the head of his penis into my vagina and saying not to worry about it, because I won't get

pregnant." But S.D. did get pregnant, and had an abortion when she was twelve years old. She told everyone that someone at school had impregnated her, but it was really Coles. She stated that she had lied because nobody believed her when she reported the abuse the first time.

{¶ 7} In June 2001, the family moved back to Lakewood, where the abuse started again at the end of the summer. S.D. testified that Coles would wake her up at night and make her have sex with him. She described how Coles would either lay on top of her or force her to get on top of him and have vaginal intercourse with her. She stated that it happened often, probably twice a week.

{¶ 8} In June 2002, the family moved to Parma, and Coles lived with them. She testified that Coles forced her to have sex with him in the basement, his bedroom, or her bedroom while her mother was at work and during the night. She testified that the abuse happened almost every day. S.D. further testified that Coles convinced her mother to put S.D. on birth control pills. Dawn married Coles in April 2003.

{¶ 9} S.D. learned she was pregnant again in March 2004. She told her mother that she had become pregnant by a boy at school, even though it was Coles who had impregnated her. S.D. testified that she had another abortion, even though she did not want to. She testified that a week after the April 2, 2004 abortion, Coles told her that she should be healed and forced her to have sex with him again and that the sex occurred a couple times a week thereafter until the family moved to Iowa in July 2004.

{¶ 10} After the family moved to Iowa, the abuse continued. In June 2005, S.D. finally told her mother about Coles' "raping" her and that the pregnancies were the result of his abuse. S.D. moved back to Cleveland to live with relatives and Dawn reported the abuse to Iowa police. Dawn testified that Coles called her shortly after S.D. returned to Ohio and admitted that he and S.D. were "lovers." Dawn further testified that Coles stated during the same conversation that it was he who wanted to break off his relationship with S.D. now that he was married to Dawn.

{¶ 11} S.D. testified that after she went to live with relatives in Cleveland, she did not get along with them and wanted to live with Coles' mother. She testified that Coles' mother would not allow her to move in until she signed a document admitting that she had fabricated the allegations against Coles. S.D. refused, but after a bad night staying in a "crack house," S.D. called Coles' mother and said she would recant her allegations. S.D. composed a short statement recanting her allegations, which was admitted into evidence.

{¶ 12} Coles called various family members to the stand, all of whom testified that they knew S.D. well and described her relationship with Coles as "normal."

-3-

Coles' mother testified that S.D. was manipulative, and she denied pressuring S.D. to recant her allegations.  Coles testified that he never raped S.D., got her pregnant, or confessed to Dawn that he and S.D. were "lovers."

{¶ 13} The jury convicted Coles of 43 counts each of rape and GSI.  The convictions related to the time period when S.D. was over the age of thirteen.  The jury acquitted Coles of the rape, kidnapping, and GSI counts that related to the time period when S.D. was under the age of thirteen, and also acquitted him of the remaining kidnapping and child endangering charges.  The trial court classified Coles as a sexual predator and sentenced him to a total of 210 years in prison.  The court sentenced him to consecutive sentences of five years in prison on each of the 42 counts of rape and consecutive sentences of six months for each GSI, to run concurrent to the sentences for rape.  The journal entries reflected that the court overlooked the jury's acquittal on one count and failed to impose sentence on the forty-third rape count.  Coles filed a notice of appeal, which we dismissed for lack of a final appealable order based on the incomplete journal entry.  Coles was resentenced, with the five-year sentence imposed for the missing rape count to run concurrent with the rest of his sentence, for a total of 210 years in prison.

*State v. Coles*, 2008 WL 4436872, at *1-*2 (Ohio App. Oct. 2, 2008)

Coles, with the assistance of counsel, again appealed, raising the following

assignments of error in his brief:

Assignment of Error I:  Joseph Coles has been denied his constitutional rights to due process and notice by the identical and undifferentiated indictments which were used to charge him.

Assignment of Error II:  Joseph Coles has been denied his constitutional right to a fair and impartial jury by the repeated introduction of prejudicial other acts evidence in the state's case in chief.

Assignment of Error III:  Joseph Coles has been denied his constitutional right to a fair and impartial jury by the repeated introduction of prejudicial victim impact evidence in the state's case in chief.

Assignment of Error IV:  Joseph Coles has been denied his liberty without due process of law, by his convictions for rape and gross sexual imposition, which were not supported by sufficient evidence to prove his guilt beyond a reasonable doubt.

Assignment of Error V:  Joseph Coles has been denied his liberty without due process of law, by his convictions for gross sexual imposition, which were not

supported by sufficient evidence to prove his guilt beyond a reasonable doubt for the reason that the complaining witness did not describe a single act of gross sexual imposition in her testimony.

Assignment of Error VI:  Joseph Coles has been denied his due process right to a fair trial by repeated prosecutorial misconduct which tainted the jury and rendered a fair and just trial impossible.

Assignment of Error VII:  Joseph Coles has been denied his constitutional right to effective assistance of counsel, by trial counsel's failure to preserve meritorious issues for appeal.

Assignment of Error VIII:  Joseph Coles was denied his liberty without due process and his right not to be subjected to punishment in violation of the Ex Post Facto Clause of the United States Constitution by the imposition of consecutive sentences.

On October 14, 2008, the state appellate court sustained the fourth and fifth assignments of error, finding that there had been insufficient evidence to sustain the convictions for gross sexual imposition. The state appellate court reversed the trial court as to those convictions and sentences and remanded the case with the instruction to vacate the convictions and sentences for gross sexual imposition.  The state appellate court otherwise affirmed the judgment of the trial court.

On October 31, 2008, the trial court vacated the 42 convictions and sentences for gross sexual imposition.  The trial court then sentenced Coles on the remaining counts resulting, again, in a total term of imprisonment of 210 years.

Coles timely appealed the state appellate court's decision to the Ohio Supreme Court.  In his memorandum in support of jurisdiction, Coles asserted six propositions of law:

Proposition of Law I:  When the State charges a defendant with an indictment which includes identical and undifferentiated counts, the indictment denied the defendant of his constitutional rights to due process and notice.

-5-

Proposition of Law II:  A defendant is denied his constitutional right to a fair and impartial jury by the repeated introduction of prejudicial other acts evidence in the state's case in chief.

Proposition of Law III:  A defendant is denied his constitutional right to a fair and impartial jury by the repeated introduction of prejudicial victim impact evidence in the state's case in chief.

Proposition of Law IV:  When a defendant is convicted in a multicount indictment and the state's witnesses can only speculate on the number of criminal offenses that actually occurred, the defendant has been denied his liberty without due process of law because the speculative evidence is not sufficient to prove his guilt beyond a reasonable doubt.

Proposition of Law V:  A prosecutor commits misconduct and denies the defendant of his right to a fair trial when he vouches for a witness's credibility and attacks the defendant's character improperly.

Proposition of Law VI:  The retroactive application of the severance remedy created in *State v. Foster* (2006), 109 Ohio St; 3d 1 violates a defendant's constitutional rights of due process and not to be subject to *ex post facto* laws.

On March 25, 2009, the Supreme Court of Ohio denied leave to appeal and dismissed

the appeal as not involving any substantial constitutional question.

Coles filed in this court a petition for writ of habeas corpus on March 11, 2010.

He raises six grounds for relief:

**GROUND ONE**:  Petitioner's rights to due process and notice were violated because his indictment charged hundreds of identical undifferentiated counts of misconduct that allegedly occurred over an extended period of time.

**GROUND TWO**:  Petitioner's right to due process was violated because his 43 rape convictions were based on speculation, which does not constitute evidence sufficient to establish guilt beyond a reasonable doubt.

**GROUND THREE**:  Petitioner was deprived his right to a fair trial by a fair and impartial jury because the jury was exposed to improper and unfairly prejudicial evidence during the prosecutor's case-in-chief.

**GROUND FOUR**:  Petitioner's rights to due process and a fair trial were violated where the prosecutor committed misconduct during closing argument by

-6-

vouching for his witness's credibility and improperly attacking the petitioner's character.

**GROUND FIVE**:  Due process, fundamental fairness and the prohibition against ex post facto laws were violated when Petitioner was sentenced under a judicially altered retroactively applied, and substantially disadvantageous statutory framework.

**GROUND SIX**:  Petitioner's 42 consecutive sentences totaling 210 years are contrary to law and violate due process because the trial court failed to make and articulate findings and reasons required to justify them.

Respondent filed an Answer/Return of Writ on May 27, 2010.  Doc. No. 7.  Coles filed a Traverse on September 3, 2010.  Doc. No. 12.  Thus, the petition is ready for decision.

II

*A.  Jurisdiction*

The Court of Common Pleas of Cuyahoga County, Ohio sentenced Coles.  Coles filed his writ of habeas corpus in the Northern District of Ohio and raises claims regarding the constitutionality of his incarceration under 28 U.S.C. § 2254.

Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. . . . Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a ) & (d).  Cuyahoga County is within this court's geographic jurisdiction.  This court has jurisdiction over Coles' petition.

*B.    Evidentiary hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances when the factual basis of a claim has not been adequately developed in

state court proceedings.  28 U.S.C. § 2254(e)(2).  There is no need for an evidentiary hearing in the instant case.  All of Coles' claims involve legal issues which can be independently resolved without additional factual inquiry.

C.      *Exhaustion of state remedies*

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus.  28 U.S.C. § 2254(b) and (c); *Castillo v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. Macklin*, 936 F.2d 790, 793 (6th Cir. 1991).  If any state procedures for relief remain available, the petitioner has not exhausted state remedies.  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

A petitioner must fairly present any claims to the state courts in a constitutional context properly to exhaust state remedies.  *Anderson v. Harless*, 489 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989).  "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied."  *Picard*, 404 U.S. at 275; *see also Harris v. Reeves*, 794 F.2d 1168. 1174 (6th Cir. 1986).  The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims.  *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

The requirement that petitioners exhaust state remedies is a matter of comity between the federal government and the states:

> The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. . . . Because "it would be unseemly in our dual system of

-8-

government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter."

*Rose v. Lundy*, 455 U.S. 509, 518 (1982) (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950)) (other citations omitted).  Because exhaustion is a matter of comity, a petition containing unexhausted claims may be denied on the merits.  28 U.S.C. § 2254(b)(2).

Coles has no state remedies available for her claim.  Because no state remedies remain available to him, Coles has exhausted state remedies.

D.    *Procedural default*

Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . .  not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure."  *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  When a petitioner

has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Procedural default occurs when a petitioner fails to present fairly to the highest state court her claims in a federal constitutional context.  *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Anderson v. Harless*,  459 U.S. 4 (1982).

If the state argues that a petitioner has procedurally defaulted her claims, the court must conduct a four-step analysis to determine whether the petitioner has indeed

defaulted and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. . . . [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). A default will also be excused if petitioner demonstrates that not excusing the default "will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

Respondent argues that Coles has defaulted his third ground for relief, that his trial violated his right to a trial by a fair and impartial jury because the jury was exposed to improper and unfairly prejudicial evidence during the prosecutor's case-in-chief. Coles acknowledges that he failed to object to the admission of this evidence at trial. He responds, however, that because he argued on direct appeal that trial counsel was ineffective for failing to object contemporaneously at trial and because the state appellate court reviewed this claim of ineffectiveness of trial counsel on the merits, the procedural defaults by trial counsel are, therefore, excused. Coles errs.

Coles' third ground for relief contends that the admission of threats against Coles' wife and S.D. to silence them, evidence that Coles left his young son alone, and victim impact testimony improperly and unfairly prejudiced the jury against him. Coles' attorney failed to object to the admission of this evidence at trial. On direct appeal,

-10-

Coles' argued that trial counsel had been ineffective for these and other alleged errors. The state appellate court noted that Coles had defaulted his claims regarding the improper admission of other acts evidence and victim impact evidence.  It nevertheless reviewed those claims under the "plain error" standard and found them to be without merit.

Ohio requires defendants to object contemporaneously to the introduction of evidence they believe to be improper.  Ohio. Crim. R. 30.  "[I]n *Engle v. Isaac,* 456 U.S. 107, 124-29, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), the Supreme Court specifically found that a default imposed for failure to object contemporaneously as required by Ohio's Rule 30 is an adequate and independent state ground to bar federal habeas review absent a showing of cause and prejudice."  *Scott v. Mitchell*, 209 F.3d 854, 867 (6th Cir. 2000).  When a defendant fails to raise an issue in the trial court, the defendant procedurally defaults appeal of that issue except for "plain error" review.  *State v. Issa*, 93 Ohio St.3d 49, 56, 752 N.E.2d 904, 915 (2001); *State v. Childs*, 14 Ohio St.2d 56, 56, 236 N.E.2d 545, 546 (1968) (paragraph three of the syllabus).  If no plain error is found on review, the review for plain error does not waive the appellant's procedural default at the trial level.  *See State v. Campbell*, 69 Ohio St.3d 38, 41-43, 630 N.E.2d 339, 345-46 (1994).

The state appellate court reviewed Coles' claim that he was denied a fair trial and an impartial jury by the improper admission of evidence for plain error.  *See Coles*, 2008 WL 4436872 at *8-*9.  As already noted, a review for plain error does not waive a procedural default at trial.

Coles' cites ineffective assistance of trial counsel as cause for his default of the

claims in ground three.  Ineffective assistance of counsel may constitute cause for failing to properly present a claim before a state court.  *See Williams v. Anderson*, 460 F.3d 789, 800 (6th Cir. 2006).  Counsel has been ineffective if his or her conduct falls below an objective standard of reasonableness and if there is a reasonable probability that but counsel's ineffective performance the outcome of the proceedings would have been different.  *Strickland v. Washington,* 466 U.S. 668, 688, 694 (1984).  Ineffective assistance of counsel may only serve as cause for a procedural default, however, if (1) the ineffective assistance of counsel claim itself is meritorious and was not procedurally defaulted or (2) cause and prejudice for such default exists.  *Edwards v. Carpenter,* 529 U.S. 446, 453 (2000).

In the instant case, Coles defaulted his claim of ineffective assistance of trial counsel because he failed to raise it as an independent claim in the Ohio Supreme Court.  He does not offer cause and prejudice for his failure to do so.  Consequently, Coles' allegation of ineffective counsel does not excuse the procedural default of his third ground for relief.

For these reasons, Coles' third ground for relief should be dismissed as procedurally defaulted.

### III.

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the

-12-

adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the current deferential standard of review, a writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence.  *Carey v. Musladin*, 549 U.S. ___, 127 S. Ct. 649, 653 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000).  Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction.  *Carey*, 127 S. Ct., at 653.

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court.  Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result.  *Id.* at 405-06.  "A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases."  *Id.* at 405.  A decision involves an unreasonable

-13-

application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand.  *Doan v. Brigano, 237 F.3d 722, 729-31 (6th Cir. 2001)*.  The court will examine Coles' remaining grounds for relief using the deferential standard applied to state court rulings on the petitioner's claims.

A.      *Ground one:  Whether the trial court denied Coles' rights to due process and notice because the indictment charged hundreds of identical undifferentiated counts of misconduct over an extended time*

Coles contends in his first ground for relief that the trial court violated his rights to due process and notice by charging him with hundreds of undifferentiated counts of misconduct over an extended time.  Respondent denies this contention.

Before examining the relevant law and the parties' arguments, the court must first address Coles' contention that the factual account of the state appellate court regarding Coles' trial and conviction is deeply flawed.

The indictment brought against Coles included 242 counts.  These counts may be broken down as follows:

Counts 1-111:  Incidents between 1/8/98 and 1/7/01 (S.D. under age 13):

|  | rape | kidnaping | gross sexual imposition | child endangering |
|---|---|---|---|---|
| no. of counts: | 37 | 37 | 37 | |

Counts 112-240, 244, 245:  Incidents between 1/8/01 and 1/5/04 (S.D. age 13 or older):

|  | rape | kidnaping | gross sexual imposition | child endangering |
|---|---|---|---|---|
| no. of counts: | 43 | 43 | 43 | 2 |

-14-

At the close of the state's case in chief, the prosecution amended the indictment in light of the evidence presented as follows. First, the prosecution changed the dates on which the alleged incidents occurred on the earliest indictments.  Whereas the original indictments alleged that the acts occurred from January 8, 1998 through January 7, 2001, the amended indictments alleged that 2 incidents of rape and gross sexual imposition occurred in July 1998 and 21 incidents each of rape and gross sexual imposition occurred between June and November of 2000.  Second, the prosecution dropped all other counts of rape and gross sexual imposition prior to January 7, 2001 and dropped all counts of kidnaping prior to that date.  Third, the prosecution renumbered the remaining counts against Coles, up through Count 202.

Coles requested a bill of particulars from the prosecution prior to trial.  According to Coles, the prosecution returned a bill of particulars with respect to each of the counts of rape reading as follows:

> FURTHERMORE, on or about the 8th day of January, 2001 through the 5th day of July, 2004, in the City of Cleveland and the City of Parma, Ohio, the Defendant, Joseph Coles, unlawfully engaged in sexual conduct with Jane Doe, date of birth January 8, 1988, by purposely compelling her to submit by force or threat of force.[1]

Coles asserted that this Bill of Particulars did not provide sufficient detail with respect to the allegations to give him proper notice.  He moved for a more detailed Bill of Particulars, but the trial court never ruled on this motion.

The jury acquitted Coles of all charges based on incidents prior to January 8, 2001.  It also acquitted him on all charges of kidnaping and child endangerment.  It

---

[1] *See* Bill of Particulars, Notice of Filing, Doc. No. 13, pp. 58-73.

-15-

found Coles guilty on 43 counts of rape and 43 counts of gross sexual imposition, all counts based on incidents occurring on or after January 8, 2001.  The court sentenced Coles to five years' imprisonment on each of 42 counts of rape[2] and sentenced him to six months' imprisonment on each of 43 counts of gross sexual imposition, to run concurrently with the sentences for rape.  Thus, Coles received a total sentence of 210 years.  On appeal, the state appellate court vacated his convictions for gross sexual imposition, as they were based on the same conduct as were his convictions for rape.  Coles now argues that his indictment on a large number of undifferentiated counts of rape over an extended period of time violated his rights to due process and notice.

The Fourteenth Amendment did not incorporate the Fifth Amendment right to a grand jury indictment against the states.  *Apprendi v. New Jersey*, 530 U.S. 466, 477 n.3 (2000).  Nevertheless, "basic principles of fundamental fairness" and the Notice Clause of the Sixth Amendment demand that a defendant be adequately notified of the precise nature of the charges against him, whether by indictment or by some other means.  *Russell v. United States*, 369 U.S. 749, 765 (1962).  Moreover, due process requires that the charges against a defendant be sufficiently described to protect the defendant from double jeopardy.  *Valentine v. Konteh*, 395 F.3d 626, 634 (6th Cir. 2005).

Each of Coles' indictments on 43 counts of rape alleged that the incident

---

[2]  The court's sentence failed to include a sentence for a rape conviction and mistakenly included a sentence for a count on which Coles had been acquitted.  The appellate court remanded the case for resentencing to correct these errors.  The trial court dropped the mistaken sentence and added a five year sentence for rape to run concurrently with the other sentences for rape.

underlying the charge occurred between January 8, 2001 and July 5, 2001 and that

Coles "engaged in sexual conduct with Jane Doe, d.o.b. January 8, 1988, by purposely

compelling her to submit by force or threat of force."  The indictments provided no other

information regarding the dates or nature of the alleged conduct.  The Bill of Particulars

for these indictments added that the incidents occurred in Cleveland or in Parma.

Coles cites *Valentine* in support of his argument, as he did in the state appellate

court on direct appeal.  A close look at *Valentine* is necessary to understand Coles'

argument and the decision of the state appellate court.

1. *Valentine v. Konteh*, 395 F.3d 626 (6th Cir. 2005)

Michael Valentine ("Valentine") was convicted of 20 counts of child rape and 20

counts of felonious sexual penetration of a minor for sexually abusing his stepdaughter.

The indictment described 40 offenses as occurring between March 1, 1995 and January

16, 1996.  Each count of rape alleged that Valentine "unlawfully engaged in sexual

conduct with [the stepdaughter] not his spouse by purposely compelling her to submit

by the use of force or threat of force, [the stepdaughter] being under the age of 13

years, to-wit: d.o.b. 11-18-87."  *Valentine*, 395 F.3d at 629 (quoting the indictment).  The

indictment did not include any information to distinguish one count of rape from another.

Similarly, each count of felonious sexual penetration alleged that Valentine "unlawfully

without privilege to do so inserted a part of the body, an instrument, apparatus or other

object to-wit: finger, into the vaginal or anal cavity of another, to-wit: [the stepdaughter]

not the spouse of the offender and who was under the age of 13 years, to-wit: d.o.b.

11-18-87, by purposely compelling her to submit by force or threat of force."  *Id.*  There

was no additional detail.  The bill of particulars simply restated the allegations, adding

-17-

only the family home as the place at which all 40 offenses occurred.

At trial, the only witness to testify to the number and nature fo the assaults was

the alleged victim:

> She testified that Valentine forced her to perform fellatio in the family living room on "about twenty" occasions and that Valentine digitally penetrated her vagina in the family living room on "about fifteen" occasions.  The child went on to testify generally as to further similar incidents occurring in her bedroom, in her siblings' bedroom, and in her mother and Valentine's bedroom.  She additionally testified that Valentine achieved anal penetration with his penis on "about ten" occasions.  As the Petitioner points out, the victim altered her numbers somewhat during cross-examination.

*Id.*  When a jury returned a verdict of guilty as to all counts, the court sentenced

Valentine to 40 consecutive life terms.  The state appellate court affirmed all 20 counts

of rape and affirmed 15 of the 20 counts of felonious sexual penetration, finding no

evidence to support the other five counts of felonious sexual penetration.  When the

Ohio Supreme Court denied leave to appeal, Valentine unsuccessfully sought state

post-conviction remedies.

Valentine filed a petition for a federal writ of habeas corpus in the Northern

District of Ohio.  The district court granted the writ upon one of Valentine's four grounds

for relief, that his conviction violated his right to due process because his indictment did

not specify the dates of his alleged offenses or specify which conduct occurred on which

date.  The district court found that the identical counts in the indictment violated

Valentine's due process rights to be notified of the crimes of which he was charged and

to be protected from double jeopardy.

The state appealed the district court's decision to the Sixth Circuit.  The Sixth

Circuit court found that the state appellate court had correctly identified the federal

-18-

constitutional issue at stake in Valentine's case as whether the lack of specificity as to

dates and conduct in his indictment denied Valentine due process of law.

Consequently, the Sixth Circuit found that the issue on appeal was whether Ohio courts

unreasonably applied Supreme Court precedent in finding that Valentine's indictment

did not violate due process.

In examining the arguments of the parties, the Sixth Circuit relied primarily upon

the criteria set forth in *Russell v. United States,* 369 U.S. 749 (1962), for determining

whether an indictment is sufficient:

> These criteria are, first, whether the indictment "contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet,'" and, secondly, "'in case any other proceedings are taken against him for a similar offense whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.'"

*Valentine*, 395 F.3d at 631 (quoting *Russell*, 369 U.S. at 763-64).  Following *Russell*,

*Hamling v. United States,* 418 U.S. 87 (1974), and *United States v. Cruikshank,* 92 U.S.

542 (1875), the Sixth Circuit held, "[A]n indictment is only sufficient if it (1) contains the

elements of the charged offense, (2) gives the defendant adequate notice of the

charges, and (3) protects the defendant against double jeopardy.  *Valentine*, 395 F.3d

at 631 (footnote omitted).  The court's conclusion after applying these criteria to

Valentine's case was the following:

> While the indictment in this case did comply with the first prong of *Russell* by adequately setting out the elements of the charged offense, the multiple, undifferentiated charges in the indictment violated Valentine's rights to notice and his right to be protected from double jeopardy.  The failure of the Ohio Court of Appeals to rectify these violations constitutes an unreasonable application of well-established constitutional law as announced by the Supreme Court.

*Id.*

The Sixth Circuit's reasoning in *Valentine* is directly applicable to Coles'

circumstances and arguments:

> This Court and numerous others have found that fairly large time windows in the context of child abuse prosecutions are not in conflict with constitutional notice requirements.  Certainly, prosecutors should be as specific as possible in delineating the dates and times of abuse offenses, but we must acknowledge the reality of situations where young child victims are involved.  The Ohio Court of Appeals found that there was no evidence the state had more specific information regarding the time period of the abuse.  Valentine's claims regarding the lack of time- and date-specific counts therefore fail.

> The problem in this case is not the fact that the prosecution did not provide the defendant with exact times and places.  If there had been singular counts of each offense, the lack of particularity would not have presented the same problem.  Instead, the problem is that within each set of 20 counts, there are absolutely no distinctions made.  Valentine was prosecuted for two criminal acts that occurred twenty times each, rather than for forty separate criminal acts.  In its charges and in its evidence before the jury, the prosecution did not attempt to lay out the factual bases of forty separate incidents that took place.  Instead, the 8-year-old victim described "typical" abusive behavior by Valentine and then testified that the "typical" abuse occurred twenty or fifteen times.  Outside of the victim's estimate, no evidence as to the number of incidents was presented.

> Given the way Valentine was indicted and tried, it would have been incredibly difficult for the jury to consider each count on its own.  The jury could not have found Valentine guilty of Counts 1-5, but not Counts 6-20.  Nor could the jury have found him guilty of Counts 1, 3, 5 and 7, but not the rest.  Such a result would be unintelligible, because the criminal counts were not connected to distinguishable incidents.  The jury could have found him "not guilty" of some of the counts only if they reached the conclusion that the child victim had overestimated the number of abusive acts.  Just as courts should not permit abuse prosecutions to be defeated due to the limited ability of child victims to remember precise temporal details, they should for similar reasons not permit multiple convictions to stand based solely on a child's numerical estimate.

> As the forty criminal counts were not anchored to forty distinguishable criminal offenses, Valentine had little ability to defend himself.

> *          *          *          *

> The indictment, the bill of particulars, and even the evidence at trial failed to apprise the defendant of what occurrences formed the bases of the criminal charges he faced.  Valentine was prosecuted and convicted for a generic pattern

-20-

of abuse rather than for forty separate abusive incidents.  States have the authority to enact criminal statutes regarding a "pattern" or a "continuing course" of abuse.  They do not have the power to prosecute one for a pattern of abuse through simply charging a defendant with the same basic offense many times over.

*     *     *     *

Requiring some minimal differentiation between criminal counts is quite different from requiring "exact time and place specifications."  Certainly, this opinion does not require that indictments allege the date, hour, and precise location of crimes.  Instead, the defendant, the judge, and the jury must be able to tell one count from another.

To be sure, differentiation will often require reference to date ranges or time ranges or certain locations or certain actions.  But, differentiation does not require overly-burdensome precision.

*Valentine*, 395 F.3d at 632-37 (footnotes and citations omitted).  The Sixth Circuit concluded that the indictment and bill of particulars permitted a conviction and sentence for one count each of rape and felonious sexual penetration.  Any additional convictions, it held, would violate due process by providing Valentine with inadequate notice to defend himself and providing inadequate protection against double jeopardy.  The court vacated, therefore, all other counts of which Valentine had been convicted.

2. *Coles' Direct Appeal in the State Appellate Court*

On direct appeal to the state appellate court, Coles argued, as he does here, that the use of undifferentiated counts against him violated his rights to due process, including due process protections against double jeopardy, and notice of the charges against him.  The state appellate court discussed *Russell* and *Valentine* before addressing these claims in its decision:

{¶ 35} Although the decision in *Valentine* is not binding on this court, we have cited the *Valentine* decision on a number of occasions.  In *State v. Warren,* 168 Ohio App.3d 288, 2006-Ohio-4104, 859 N.E.2d 998, the defendant was charged

-21-

in a 48-count indictment charging him with twelve identical counts of rape of a child under the age of thirteen, GSI, kidnapping, and felonious sexual penetration.  In *State v. Hemphill,* Cuyahoga App. No. 85431, 2005-Ohio-3726, the defendant was charged with 33 counts of rape, 33 counts of kidnapping, and 33 counts of GSI.  In *State v. Hilton,* Cuyahoga App. No. 89220, 2008-Ohio-3010, the defendant was convicted of thirteen counts of rape, thirteen counts of GSI, and thirteen counts of kidnapping.  In these cases, this court cited *Valentine* with approval and affirmed some of the convictions and reversed others, finding reversal was warranted where the victims only estimated the number of times the abuse occurred and the indictments failed to connect the defendant to "individual, distinguishable incidents."  For example, in *Hilton,* we found that the State's use of a numerical estimation to support a multi-count indictment raised precisely the sort of due process violation addressed in *Valentine.*  But we also noted that, unlike the victims in *Valentine* or *Hemphill,* the victim was able to recall details of specific incidents of sexual abuse by appellant and differentiate these incidents by the location where each occurred.  *Id.*  We found sufficient factual bases to differentiate between five counts of rape, five counts of GSI, and ten counts of kidnapping and affirmed the convictions on those counts.  *Id.*

{¶ 36} In *State v. Ford,* Cuyahoga App. No. 88236, 2007-Ohio-2645, this court affirmed the convictions from multi-count indictments, finding there was no due process violation because the defendant denied any sexual contact whatsoever with the victims; thus, the lack of specificity in the indictments as to specific dates or places of the alleged abuse did not result in prejudice to the defendant's defense.  Additionally, in *State v. Russell,* Cuyahoga App. No. 88008, 2007-Ohio-2108, and *State v. Rice,* Cuyahoga App. No. 82547, 2005-Ohio-3393, this court rejected challenges based on *Valentine* where the testimony elicited from the child-victims provided sufficient differentiation among the counts.

{¶ 37} In *Yaacov,* (discretionary appeal not allowed, 112 Ohio St.3d 1494, 2007-Ohio-724, 862 N.E.2d 119), the defendant was charged with 42 counts of rape, 40 counts of GSI, 42 counts of sexual battery, and one count of tampering with evidence.  He was convicted of all but one count of rape and one count of sexual battery.  We distinguished *Valentine* and found sufficient differentiation among the counts based on the victim's ability to recall when, where, and how the abuse occurred.  Although the victim in *Yaacov* was not able to give specific dates, she was able to put each incident in a time frame by detailing where it happened, which house they were living in, and where she and the defendant worked when the abuse occurred.  *Id.*  We also found that, unlike *Valentine* and *Hemphill,* other evidence was presented to substantiate the victim's claims.  In *Yaacov,* unlike *Valentine,* the State did not merely estimate, nor have the victim estimate, how many times she was molested.  We noted that the bill of particulars identified the victim, her date of birth, and the places where the crimes occurred, and therefore we concluded that the victim's testimony provided discernible facts to substantiate the separate charges.  *Id.*

-22-

{¶ 38} After a careful review of the record in this case and an analysis of this court's prior decisions citing *Valentine,* we find that there was sufficient evidence in S.D.'s testimony and other evidence presented at trial that provided discernible facts to substantiate the separate charges.

{¶ 39} S.D. was able to recall when, where, and how the abuse occurred.  She testified that the abuse started again in the summer of 2001 when the family was living on Clifton Avenue in Lakewood.  She testified that it was the summer between her seventh and eighth grade.  Although she did not remember how it started, she remembered the abuse occurred in the living room or her mother's room.  She was able to fully describe the house the family was living in and testified that Coles would wake her up at night when he was drunk and her mother was asleep.  She testified that Coles would tell her to come into his room or would wake her up in the middle of the night and tell her to take her clothes off and he would either have his boxer shorts on or he would be naked and he would tell her to have sex with him.  She described that he would either get on top of her or make her get on top of him and put his penis in her vagina.  She also stated that Coles threatened her and told her that he would hurt her, kill her, break her neck, or hurt her mom if she told anyone about the abuse.  S.D. testified that the abuse happened "probably twice a week" for the year that she was living in Lakewood.

{¶ 40} In June of 2002, when the family moved to Parma with Coles, S.D. testified that the abuse intensified so that she and Coles were having sex "almost every day" and that the abuse would occur in the finished basement, in Coles' bedroom, or in her bedroom.  She stated that he made her have sex with him just like he did in Lakewood and that the abuse usually occurred while her mother was at work or at night.  Then S.D. became pregnant again in 2004 and Coles threatened her and told her to "blame it on one of [her] guy friends."  S.D. had an abortion on April 2, 2004, and remembered the date because it was also her little brother's birthday.  S.D. testified that Coles made her start having sex with him one week after the abortion, telling her that she should be healed from the abortion.  She then testified that Coles made her have sex "a couple times a week" between April 2 and July 5, 2004, when the family moved to Iowa.

{¶ 41} Although, at one point during the trial, the State asked S.D. to estimate how many times Coles had molested her, we note that the estimation she gave was only for those crimes for which the jury acquitted Coles.  In other words, S.D. "guessed" how many times Coles had molested her between the ages of ten and thirteen, but the jury acquitted him of those charges.

{¶ 42} Thus, S.D. was able to put each incident in a time frame by detailing where it happened and which house she was living in.  She was also able to place certain offenses within a particular time frame by tying the offenses to her grade in school.  See *State v. Crosky,* Franklin App. No. 06AP-655, 2008- Ohio-145;

-23-

*State v. Lawwill,* Cuyahoga App. No. 88251, 2007-Ohio-2627.  And, like *Yaacov,* but unlike the situations in *Valentine* and *Hemphill,* other evidence was presented to substantiate S.D.'s claims.  Dawn Coles testified that Coles admitted to her that he and her daughter were "lovers."  The medical records substantiated that S.D. had an abortion in April 2004.  And the State was able to show that the frequency of rape increased when Dawn was pregnant.

{¶ 43} In this case, the State attempted to set forth the factual basis for each incident of molestation that occurred over a three and one-half year period.  The allegation was that Coles molested his stepdaughter repeatedly for over three years.  The bill of particulars identified the victim, her date of birth, and the places the crimes occurred.  The trial court instructed the jurors that each of the charges constitutes a distinct and separate offense, and that they must consider each count separately.  *State v. Brady,* Cuyahoga App. No. 87854, 2007-Ohio-1453.

{¶ 44} We also find that the failure to allege specific dates did not prejudice Coles' ability to defend himself because his defense strategy centered on his claim that he never engaged in sexual conduct with S.D., regardless of the date or place she alleged the abuse took place.  See *Yaacov; State v. Bennett,* Brown App. No. CA2004-09-028, 2005-Ohio-5898, ¶ 33 (remanded by *In re Ohio Crim. Sentencing Statutes Cases,* 109 Ohio St.3d 313, 2006-Ohio-2109, 847 N.E.2d 1174); *State v. Carnes,* Brown App. No. CA2005-01-001, 2006-Ohio-2134; *State v. Barnecut* (1988), 44 Ohio App.3d 149, 152, 542 N.E.2d 353.

{¶ 45} Thus, we conclude the indictment was properly filed and alleged sufficient facts to apprise Coles of the charges against him.

*Coles*, 2008 WL 4436872 at *4-*8.

### 3.  Whether Coles was denied adequate notice in light of *Valentine*

Coles contends that the indictment denied him due process because, as was the case in *Valentine*, the indictment consisted of a series of identical counts of his offense, without distinguishing detail of any kind.  Consequently, Coles contends, he was prosecuted for a "course of conduct" rather than for 43 separate instances of rape.  Respondent repeats the state appellate court's conclusion that the details of S.D.'s testimony made it possible to distinguish the various counts of rape against Coles from one another.  Coles replies that the state appellate court erred in asserting that S.D.

-24-

provided distinguishing detail with regard to the rape counts of which he was convicted and further notes that the alleged incidents occurring in Lakewood fall outside the scope of the Bill of Particulars.

The state appellate court asserted that S.D. distinguished the differing instances of relevant allegations of abuse as follows:

1.    Incidents in Lakewood:  S.D. said the abuse started in the summer of 2001 when the family was living on Clifton Avenue in Lakewood.  She said that this was the summer between seventh and eighth grade.  The abuse occurred in the living room, her mother's room, and Coles' room. Sometimes Coles was naked and sometimes he wore boxer shorts. Sometimes he got on top of her and sometimes he had her get on top of him.  S.D. also testified that the abuse occurred "probably" twice a week in Lakewood.

2.    Incidents in Parma:  S.D. testified that abuse occurred "almost every day" in the finished basement, Coles' bedroom, or her bedroom.  She also testified that abuse usually occurred while her mother was at work or at night.  After she had an abortion, S.D. testified, Coles made her have sex one week after the abortion.  She estimated that she had sex "a couple times a week" between April 2, 2004 and July 5, 2004, when her family moved to Iowa.[3]

_____

[3]  S.D. also testified that her family moved to Parma in June of 2002, that the abuse continued right after she moved there, and that it occurred before, during, and after she took birth control pills at about age 14.  S.D. became pregnant again in January 2004, and she had her second abortion on April 2, 2004.  *See* Transcript of Proceedings, v. 1,

-25-

The state appellate court concluded, "Thus, S.D. was able to put each incident in a time frame by detailing where it happened and which house she was living in.  She was also able to place certain offenses within a particular time frame by tying the offenses to her grade in school."  *Coles*, 2008 WL 4436872 at *7.

　　　S.D.'s testimony, as described by the state appellate court, distinguishes six incidents of rape.  First, S.D.'s testimony that she was in the fifth grade at the time refers to alleged rapes occurring before she was 13 years old.  Coles was acquitted with respect to those allegations.  Consequently, this testimony is not relevant to Coles' convictions.  Second, with respect to rapes occurring in Lakewood, S.D.'s testimony distinguishes three incidents of rape by location:  in the living room, in her mother's room, and in Coles' room.  Although S.D. also differentiated rapes by what Coles was wearing and by her relative position to Coles, the relationship between these differences and the locations in which they occurred is unclear.  At most, S.D.'s testimony clearly distinguishes three rapes by location in Lakewood.  Third, S.D.'s testimony clearly distinguishes three instances of rape in Parma by location: in the finished basement, Coles' bedroom, or S.D.'s bedroom.  Again, the testimony reported by the state court also distinguishes rapes by time, before she had an abortion and one week after the abortion,[4] but the relationship between these incidents and the incidents distinguished by location is not clear.  Consequently, S.D.'s testimony describes a total of six

_____

Answer, Exh. 23, pp. 247-59.

　　　[4]  As the incident one week after the abortion falls into the period between April 2, 2004 and July 5, 2004, the incident one week after the abortion is not clearly distinguishable from the incidents in the period between April 2, 2004 and July 5, 2004.

-26-

distinguishable instances of rape. The state appellate court's factual determination to the contrary was not reasonable given the facts presented at trial.

Coles asserts that *Valentine* prohibits the use of the alleged victim's testimony to distinguish differing counts of identical indictments so as to provide notice of separate instances of alleged misconduct. This is by no means clear. *Valentine* seems to indicate that trial testimony differentiating one count from another, otherwise-indistinguishable count may constitute "notice" within the meaning of the Constitution. The Sixth Circuit wrote:

> The indictment, the bill of particulars, and even the evidence at trial failed to apprise the defendant of what occurrences formed the bases of the criminal charges he faced. . . .

> The due process problems in the indictment might have been cured had the trial court insisted that the prosecution delineate the factual bases for the forty separate incidents either before or during the trial.

*Valentine*, 395 F.3d at 634.[5] Absent greater clarification from the Sixth Circuit, this court cannot recommend the grant of habeas relief based on the principle that trial testimony

---

[5] Petitioner misreads *Valentine* to say that factual distinctions in the details of the crimes were found to be insufficient to give adequate notice in *Valentine*. That is not what the case says:

> In the present case, no factual distinctions were made among any of the forty counts. The record indicates that some specification was possible. The child victim described different locations (bedroom, living room, parents' room, siblings' room), different sexual actions (fellatio, vaginal penetration, anal penetration), different times of day (early morning, after school, in the middle of the night). Despite this potential, little effort was made to disaggregate the whole of the abuse and try the case in forty counts as charged.

*Valentine*, 395 F.3d at 633-34. In other words, the Sixth Circuit found that the prosecution *could* have used factual differences to distinguish some of the counts but failed to do so. This is a far cry from finding that factual distinctions may not be used to distinguish otherwise identical counts of an indictment for purposes of giving notice.

which creates distinctions among otherwise-indistinguishable counts of an indictment is insufficient to constitute "notice" within the meaning of the Constitution.[6]

Although S.D.'s testimony is sufficient to distinguish six separate incidents of rape, the indictments and the evidence adduced at trial were insufficient to provide Coles with notice as to 43 counts of rape.  The indictments did not in any way distinguish one count from another, nor did the prosecution explain the evidentiary basis for any one count as distinguished from any other count, other than the testimony noted above.  Coles was charged with a pattern of behavior, distinguishable at trial only by the locations at which the behavior occurred.  The court's analysis and conclusion in *Valentine* that the defendant was prosecuted for a criminal act that occurred many times is applicable here:

> Given the way Valentine was indicted and tried, it would have been incredibly difficult for the jury to consider each count on its own.  The jury could not have found Valentine guilty of Counts 1-5, but not Counts 6-20.  Nor could the jury have found him guilty of Counts 1, 3, 5 and 7, but not the rest.  Such a result would be unintelligible, because the criminal counts were not connected to distinguishable incidents. . . . As the forty criminal counts were not anchored to forty distinguishable criminal offenses, Valentine had little ability to defend himself.

Absent anything that clearly distinguished more than six counts of the indictment from the others, Coles was not provided sufficient notice to allow him to defend himself against 37 counts of rape.  Consequently, Coles was denied his due process right to

_____

[6]  Coles also notes that the bill of particulars never identified Lakewood as the location of any alleged abuse and that the prosecutor never amended the indictment to include Lakewood as a site of abuse.  *See* Traverse at 16, 18.  Coles does not raise this issue in his petition, however, nor does he argue in his traverse that this as a ground for relief.

-28-

notice of the charges against him with respect to 37 counts of rape.

For these reasons, the indictment and trial in Coles' case violated his due process right to adequate notice of 37 of the crimes with which he was charged. *Valentine* teaches the cure for this violation. There was no constitutional problem with finding Coles guilty of six counts of rape; problems arose when he was charged with additional, undifferentiated counts of the same offense. *Valentine*, 395 F.3d at 637. Consequently, all but six of the counts of rape on which Coles was convicted must be vacated. *Id.* at 638-39.

### 4. Whether Coles was denied due process because his indictment and trial did not provide protection against double jeopardy in light of Valentine

Coles also contends that the indictment denied him due process because, as was the case in *Valentine*, the indictment and evidence at trial fail to protect him from double jeopardy. Respondent claims that Coles' conviction protects him against double jeopardy by "the court's instructions concerning the distinctiveness of each count and that each count had to be determined separately." Answer at 16-17.

In *Valentine*, the Sixth Circuit reasoned as follows regarding protection against double jeopardy:

> Due process . . . requires that criminal charges provide criminal defendants with the ability to protect themselves from double jeopardy. In the present case, the indictment presented two important double jeopardy problems. First, there was insufficient specificity in the indictment or in the trial record to enable Valentine to plead convictions or acquittals as a bar to future prosecutions. Second, the undifferentiated counts introduced the very real possibility that Valentine would be subject to double jeopardy in his initial trial by being punished multiple times for what may have been the same offense
>
> In *Russell* [*v. United States*, 369 U.S. 749 (1962)], the court found that indictments are only constitutionally sufficient if "the record shows with accuracy to what extent he may plead a former acquittal or conviction" in proceedings

taken against him for a similar offense. 369 U.S. at 764. The District Court held that the indictments in this case failed to comply with this mandate of *Russell*. 285 F. Supp. 2d at 1026-27. In *Russell,* a case in which the defendants were being tried for their failure to answer questions before a congressional subcommittee, the Court ruled that the charging information was specific enough to protect against double jeopardy:

> Since the indictments set out not only the times and places of the hearings at which petitioners refused to testify, but also specified the precise questions which they then and there refused to answer, it can hardly be doubted that the petitioners would be fully protected from again being put in jeopardy for the same offense, particularly when it is remembered that they could rely upon other parts of the present record in the event that future proceedings should be taken against them.

> 369 U.S. at 764. In this case, there was no specificity regarding the factual offenses Valentine allegedly committed. If Valentine had been acquitted of these 40 charges, it is unclear what limitations would have been imposed on his re-indictment. Would double jeopardy preclude any prosecution concerning the abuse of this child victim, the abuse of this victim during the stated time period, the abuse of this victim at their residence, the stated sexual offenses in the indictment, the offenses offered into evidence at trial, or some group of forty specific offenses? We cannot be sure what double jeopardy would prohibit because we cannot be sure what factual incidents were presented and decided by this jury. If Valentine had been found not guilty, it is not clear to what extent he could ably assert that his acquittal barred prosecution for other similar incidents.

*Valentine*, 395 F.3d at 634-35.

As already described, Coles' indictment and trial resulted in his conviction for a pattern of behavior on 37 of the 43 counts. The victim's testimony that she was raped, at various times, once a week, twice a week, or almost every day between January 8, 2001 and January 5, 2004 creates allegations of hundreds of incidents of rape. It is impossible to tell which incidents were the basis of 37 of Coles' 43 convictions. Should Coles again be indicted for rape of S.D. during January 8, 2001 and January 7, 2004, he would be unable to determine whether any of the counts on which he was convicted

-30-

barred the counts of a second indictment on the ground of double jeopardy.[7]

Respondent's claim that Coles' conviction protects him against double jeopardy by "the court's instructions concerning the distinctiveness of each count and that each count had to be determined separately" is not well taken.  Such an admonition to the jury is meaningless if, as already shown, it was impossible to distinguish more than six counts of rape from the other 37 counts.  Under such circumstances, Coles is at risk of conviction for a second time on any of the 37 undifferentiated counts of rape for which he was already convicted.

Coles' indictment and trial failed to protect him against double jeopardy.  Consequently, his indictment and trial were not a reasonable application of clearly established federal law, as interpreted by the Sixth Circuit in *Valentine*.  This violated his right to due process.

Nor may the state cure this constitutional violation by promising not to try Coles again.  *Valentine* found the following in rejecting a similar proffer to cure a violation of the Double Jeopardy Clause:

> The state now declares it "is willing to stipulate, Valentine cannot be indicted for either rape or felonious sexual penetration for the period set forth in the indictment."  Resp.'s Br. at 11.  By their argument, this stipulation would cure any double jeopardy problem.  *See Fawcett v. Bablitch,* 962 F.2d 617, 619-620 (7th Cir.1992) ("The prosecutor took care of the [double jeopardy issue] by stipulating that [the defendant] would be immune from further prosecution for any sexual contact with [the victim] during the entire six-month period [of the indictment].")  It appears that the present case is distinguishable as Ohio's current stipulation was made only after Valentine's trial and conviction.  The state additionally contends

---

[7]  Coles is not protected against future prosecution by a statute of limitations.  In 1999, Ohio extended the limitations period for gross sexual imposition to 20 years.  Coles will remain in jeopardy of future prosecution due to conduct that forms the basis of this case until 2024.  *See State v. Simms*, 2005 WL 3536469, at *2-*4 (Ohio App. Dec. 23, 2005).

> that as a practical matter, Valentine will face no further prosecution.  They argue that since Valentine is serving 35 consecutive life sentences, any risk of double jeopardy is "purely theoretical."  Resp.'s Br. at 28-29.  This argument suggests that placing a defendant at risk of double jeopardy is acceptable so long as the prosecution wins and is pleased with the verdict and sentence.  In this appeal, it is immaterial that Valentine faces no current risk of being tried a second time.  Courts in habeas proceedings must ensure prisoners were afforded proper constitutional protections during their state criminal proceedings.  As the carbon-copy counts of Valentine's indictment would have complicated any subsequent assertion of double jeopardy, we find that his due process rights were violated.

*Valentine*, 395 F.3d at 635.  The cure in this case must be the same as the cure in *Valentine*:  Either the state must vacate all but six of the counts of rape on which Coles was convicted or this court should grant the writ.

Coles may object that the court should vacate *all* the counts of rape on double jeopardy grounds because none of the six remaining convictions protects him from double jeopardy.  For example, one remaining conviction would be for the rape of S.D. in the living room of the Lakewood house.  As S.D. alleged multiple rapes at this location, Cole might argue, retaining a single conviction for a rape in this location does not protect him from a later indictment for a rape in the same location, without any assurance that a conviction on the later indictment might result from the same acts that produced the similar conviction on the first indictment.

While this argument has merit, the argument goes beyond the teaching of *Valentine*.  In *Valentine*, the court determined that there were *no* facts differentiating any of the counts of rape from one another or differentiating any of the counts of felonious penetration from one another.  The victim alleged multiple counts of each offense, far beyond the 20 counts of each offense of which Valentine was convicted.  By Coles' potential argument, the Sixth Circuit should have ordered all 20 counts of each offense

vacated, since the undifferentiated indictments and lack of factual distinction between counts at trial failed to protect Valentine against later prosecution for similar, "other" acts during the period of his offenses.  But that is not what the court did.  Instead, the court found that all but one count each of rape and felonious sexual penetration should be vacated.

In Coles' case, there were sufficient facts adduced at trial to distinguish between six counts of rape.  Following the court in *Valentine*, this allows six counts of rape to survive double jeopardy considerations.

B.     *Ground two:  Whether the trial court denied Coles' right to due process because his 43 rape convictions were based on speculation, which is insufficient to establish guilt beyond a reasonable doubt*

Coles argues in his second ground for relief that he was denied due process because his convictions upon 43 counts of rape were based entirely upon S.D.'s speculation regarding the number of rapes that occurred.  This, Coles contends, is insufficient to establish guilt beyond a reasonable doubt as to 43 separate acts.  Respondent answers that S.D.'s statements regarding the frequency of abuse were precise rates of abuse, not estimates, and that there was sufficient evidence presented at trial to convict Coles' on 43 counts of rape.

The due process clause of the Fourteenth Amendment requires that a criminal conviction be based upon proof beyond a reasonable doubt as to every fact necessary to constitute the offense charged.  *In re Winship*, 397 U.S. 358, 363-64 (1970).  The test of whether a conviction is supported by sufficient evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v.*

-33-

*Virginia*, 443 U.S. 307, 319 (1979).  A habeas court resolves all conflicting inferences in favor of the prosecution, and does not weigh the credibility of witnesses.  *Walker v. Engle*, 703 F.2d 959, 969 (6th Cir.), *cert. denied*, 464 U.S. 962 (1983).  The evidence need not be sufficient to convince the habeas court of the petitioner's guilt beyond a reasonable doubt.  *Fuller v. Anderson*, 662 F.2d 420, 435 (6th Cir. 1981), *cert. denied*, 455 U.S. 1028 (1982).

Coles does not contend that the evidence at trial fails to allow a rational trier of fact to find that he committed rape.  Rather, he argues that S.D.'s estimates alone are insufficient to support convictions for 43 separate instances of rape.  As already noted, S.D.'s testimony at trial was sufficient to support hundreds of instances of rape between January 8, 2001 and January 7, 2004.  S.D.'s testimony was that rapes occurred once a week, twice a week, or nearly every day within given periods.  Coles' argument to the contrary, this evidence is clearly sufficient to support 43 convictions for rape.

Although Coles asserts that Ohio caselaw prohibits using witnesses' "guesstimates" as the basis for multiple convictions, he cites no finding of the Supreme Court that testimony such as that offered by S.D. is evidence that is constitutionally insufficient to support a number of convictions far lower than the number of incidents referred to in testimony.  Absent such a finding, there is no basis for awarding Coles' relief on the ground that the evidence adduced at trial was insufficient to support 43 instances of rape.

For the reasons given above, Coles' second ground for relief should be dismissed.

C.      *Ground four:  Whether prosecutorial misconduct during closing arguments*

-34-

*violated Coles' rights to due process and a fair trial*

Coles asserts in his fourth ground for relief that the prosecutor's misconduct during closing arguments violated his rights to due process and a fair trial when the prosecutor improperly vouched for S.D.'s testimony and attacked Coles' character. Respondent denies that the prosecutor's statements deprived Coles of a fair trial.

"The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips,* 455 U.S. 209, 219 (1982).  The aim of due process "is not punishment of society for the misdeeds of the prosecutor but avoidance of an unfair trial to the accused." *Id.* (citations omitted).  To obtain habeas relief a petitioner must show that prosecutorial misconduct was sufficiently egregious that it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright,* 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637 (1974)); *see also  United States v. Young,* 470 U.S. 1, 11-12 (1985) (holding that habeas relief may by granted only if the prosecutor's conduct was so egregious as to render the petitioner's trial fundamentally unfair).  This determination must be made by considering the totality of the circumstances of each case.  *See Byrd v. Collins,* 209 F.3d 486, 529-30 (6th Cir.2000).  The "touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith,* 455 U.S. at 219.

Prosecutorial misconduct is subject to harmless error analysis.  *Pritchett v. Pitcher,* 117 F.3d 959, 964 (6th Cir. 1997).  On federal habeas review, a petitioner must show that a trial error "had substantial and injurious effect or influence in determining

-35-

the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993).  The Sixth Circuit

uses a two-step method for determining whether prosecutorial misconduct has violated

a defendant's right to due process.  *United States v. Carter,* 236 F.3d 777, 783 (6th Cir.

2001).  First, the court must determine whether the prosecutor's remarks were, indeed,

improper.  If they were, then the court must apply a four-factor test to determine

whether the remarks were flagrant and violated the defendant's rights.  *United States v.*

*Carroll,* 26 F.3d 1380, 1385 (6th Cir. 1994).  The four *Carroll* factors include the

following:   "(1) whether the conduct and remarks of the prosecutor tended to mislead

the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or

extensive; (3) whether the remarks were deliberately or accidentally made; and (4)

whether the evidence against the defendant was strong."  *Id.*  The Supreme Court has

also looked to see whether curative jury instructions reduced the likelihood that the

prosecutor's remarks created unfair prejudice.  *Darden v. Wainwright*, 477 U.S. 168,

182 (1986).

The remarks during closing argument of which Coles complains are of two types.

First, the prosecutor twice averred that S.D. must be telling the truth:  "I can't imagine a

victim or witness in any case that would be more credible or believable than [S.D.] was

in this case, " Transcript of Proceedings, v. 4, Answer, Exh. 26, pp. 879-80, and "[S.D.]

did not waiver from what she said before.  She told the truth.  You could see the

demeanor . . . ," *id.* at 941. The trial court sustained the defense's objection to the

former remark and overruled its objection to the latter.  Second, the prosecutor stated

that Coles was "an abuser.  He does his whoopings.  He beats Dawn.  Complete

careless regard for anybody but himself.  He gets his gratification off of beating people

-36-

and off of raping [S.D.]."[8]  *Id.* at 944.  The defense did not object to this comment.[9]

The state appellate court reviewing the assignments of error encompassed by Coles' fourth ground for relief made the following findings relevant to Coles' habeas petition:

{¶ 64} Generally, the State is given a great deal of latitude during closing argument.  See *State v. Bies,* 74 Ohio St.3d 320, 326, 1996-Ohio-276, 658 N.E.2d 754.  Prosecutors are given latitude to argue what the evidence has shown and what inferences can reasonably be drawn from the evidence.  *State v. Smith,* 80 Ohio St.3d 89, 111, 1997-Ohio-355, 684 N.E.2d 668.

{¶ 65} Coles argues that when the prosecutor told the jury, "I can't imagine a victim or witness in any case that would be more credible or believable than [S.D.] was in this case" and "[S.D.] did not waiver from what she said before. She told the truth.  You could see the demeanor * * * " unfairly prejudiced him [sic] because the State was vouching for S.D.'s truthfulness.  Coles also complains that the prosecutor attacked his credibility by calling him an abuser.

{¶ 66} The State is permitted to comment on the testimony of witnesses and the evidence, and may suggest a logical conclusion that can be drawn therefrom. *State v. Thompson* (1993), 87 Ohio App.3d 570, 582, 622 N.E.2d 735.  The prosecutor may comment on the testimony of the witnesses, including the defendant, and suggest the conclusions to be drawn therefrom.  *State v. Draughn* (1992), 76 Ohio App.3d 664, 670, 602 N.E.2d 790.  Even though the prosecutor improperly expressed his personal opinion during closing argument, he was arguably commenting on what the evidence showed.  The prosecutor was not averring to his personal knowledge, but he was using the statements to enforce what the evidence and testimony revealed.  See *State v. Williams,* Cuyahoga App. No. 87320, 2006-Ohio-4768.  And, in this case, the court cautioned the prosecutor and told the jury to disregard the prosecutor's statements.[10]

---

[8]  The trial court admitted evidence regarding Coles' abuse of S.D. and her mother because it was found to be part of Coles' scheme for intimidating the pair to cover up the sexual crimes of which he was charged.

[9]  Respondent does not argue that Coles' has defaulted any argument based on this remark by his failure to object contemporaneously to it.

[10]  The court did not, at the time of the sustained objection, instruct the jury to disregard the prosecutor's statement.  Instead, it waited for closing remarks to tell the jury

-37-

*        *        *        *        *

{¶ 68} We . . . find that the overwhelming evidence of guilt renders this alleged error harmless.  The trial court instructed the jury that it must decide the case on the evidence and that opening statements and closing arguments were not evidence.  We presume that the jury followed the court's instructions.  *State v. Loza,* 71 Ohio St.3d 61, 79, 1994-Ohio-409, 641 N.E.2d 1082.

{¶ 69} Therefore, we find that the prosecutor's statements during . . . closing argument did not prejudice Coles and deny him a fair trial.  We cannot say, and Coles has not demonstrated, that absent the prosecutor's statements, the outcome of the trial would have been different.

*Coles*, 2008 WL 4436872 at *11.

The state appellate court's opinion is not a model of clarity.  The court apparently concluded that one remark was improper:  the prosecutor's assertion, "I can't imagine a victim or witness in any case that would be more credible or believable than [S.D.] was in this case," because that comment expressed a personal belief, rather than a conclusion drawn from evidence.  The second reference to S.D.'s truthfulness was a conclusion from her behavior and demeanor and is permitted under Ohio law, as evidenced by the trial court's overruling the defense's objection to it.  Consequently, the second remark regarding S.D.'s truthfulness was not improper.

The trial court was not asked to review the remarks about Coles' being an abuser, and the state appellate court, although noting the remarks, did not examine them.  The comment, that Coles was "an abuser.  He does his whoopings.  He beats Dawn.  Complete careless regard for anybody but himself.  He gets his gratification off of beating people and off of raping [S.D.]," must be regarded as an argument that Coles'

---

that the statements of the attorneys were not evidence and that anything regarding which there had been a sustained objection should be ignored.

acted in conformity with his character in sexually abusing S.D.  As such, the argument was barred by Ohio Evid. R. 404(A).

As the prosecutor's first comment regarding S.D.'s truthfulness and his comment about Coles' being an abuser were improper, the court must determine whether they were sufficiently flagrant to have violated Coles' rights.  Both remarks tended to prejudice Coles.  They were isolated.  The remarks may have been deliberate or accidental; it is not apparent from the record before the court.  This court cannot agree that the evidence against Coles was strong.  A social worker and a doctor corroborated some portions of S.D.'s testimony, and S.D.'s mother asserted that Coles had admitted that he and S.D. were "lovers."  But there was no corroboration for the central fact of the case:  That Coles raped S.D.  Moreover, Coles denied stating that he and S.D. were lovers.  In the final analysis, the case came down to S.D.'s testimony against Coles. The jury decided it believed S.D., and the presence of some corroborating evidence as to portions of her testimony may have been a factor in this decision.  The court gave a curative instruction as to the improper remark regarding S.D.'s truthfulness, but not at the time the remark was made.  In sum, the relevant factors do not conclusively support any conclusion, although the balance of factors favors a finding that the prosecutor's remarks were not sufficiently flagrant to have violated Coles' rights.

Looking at the totality of the circumstances, however, the court can say with confidence that the prosecutor's two remarks in closing argument did not so infect Coles' trial with unfairness as to make the resulting conviction a denial of due process or render Coles' trial fundamentally unfair.  While the court would hesitate to call the evidence against Coles' "strong," it was sufficient to justify confidence in his conviction

-39-

despite the prosecutor's two improper remarks in closing.  Consequently, Coles' contention that prosecutorial misconduct denied him due process and a fair trial is not well-taken.

For the reasons described above, Coles' fourth ground for relief should be dismissed.

D.      *Ground five:  Whether Coles' sentence violated due process and the prohibition against ex post facto laws*

Coles' fifth ground for relief contends that sentencing him pursuant to the sentencing statutes revised by *State v. Foster,* 109 Ohio St.3d 1, 845 N.E.2d 470 (2006), was constitutionally impermissible.  According to Coles, because his conduct occurred before *Foster* was decided, his sentences should have been minimum sentences for each count of rape and should have been served concurrently.  The trial court's failure to impose such sentences violated his right to due process and his right to be free from *ex post facto* laws.  Respondent denies that Coles' sentence violated his constitutional rights.

Article I, § 10 of the United States Constitution provides that no state shall pass *ex post facto* laws. U.S. Const, Art. I, § 10.  The Constitution's bar against *ex post facto* laws, however, does not apply to courts:

> The *Ex Post Facto* Clause, by its own terms, does not apply to courts.  Extending the Clause to courts through the rubric of due process . . . would circumvent the clear constitutional text.  It also would evince too little regard for the important institutional and contextual differences between legislating, on the one hand, and common law decisionmaking, on the other.

*Rogers v. Tennessee,* 532 U.S. 451, 460 (2001).

Although the *Ex Post Facto* Clause does not apply to courts, "limitations on *ex*

*post facto* judicial decisionmaking are inherent in the notion of due process."  *Id.* at 456.

In particular, the Supreme Court has found that a court may not unexpectedly and

indefensibly construe a criminal statute so as to criminalize conduct which had not been

criminal prior to the court's new construction.  *See Bouie v. City of Columbia*, 378 U.S.

347 (1964).  The Supreme Court has explicitly declined, however, to apply all the

protections of the *Ex Post Facto* Clause to courts by way of the due process clause.  *Id.*

at 458-461.

In the present case, Coles argues that because the events specified in the

indictment occurred before the decision in *Foster*, application of *Foster's* judicially-

reconstructed sentencing statute violated his right to be free from *ex post facto* laws.

This argument is supported in part by *Bouie v. City of Columbia*, 378 U.S. 347, 353

(1963), in which the Supreme Court held that "an unforeseeable judicial enlargement of

a criminal statute, applied retroactively, operates precisely like an *ex post facto* law,

such as Art. I, § 10, of the Constitution forbids."  *See also Rogers v. Tennessee,* 532

U.S. 451, 459 (2001).

Coles' argument is not well-taken for four reasons.  First, the judicial enlargement

of a criminal statute in *Bouie* was very different from the alleged enlargement in *Foster*.

In *Bouie*, a South Carolina statute prohibited entry onto land after the posting of notice

prohibiting such entry.  Defendants were arrested pursuant to that statute during a lunch

counter sit-in for civil rights when they were ordered to leave after being notified that

they were trespassing if they remained.  The defendants had not been given notice

prohibiting their entry to the lunch counter prior to their entry.  Upon appeal, the South

Carolina supreme court re-interpreted the relevant statute to prohibit remaining on a

property after notice was given as well as entry onto the property.  The Supreme Court struck down the convictions and agreed with the appellants that South Carolina had punished them for conduct that was not criminal at the time they committed it, thus violating the requirement of the due process clause that a criminal statute give fair warning of the conduct which it prohibits.  According to the Court, "If a judicial construction of a criminal statute is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue,' it must not be given retroactive effect."  *Bouie*, 378 U.S. at 354 (quoting Hall, GENERAL PRINCIPLES OF CRIMINAL LAW (2d ed. 1960), at 61).

*Foster* differs considerably from *Bouie*.  *Foster* did not criminalize any conduct which had not been criminal prior to the decision.  Nor did *Foster* increase the maximum penalty that could be handed down for a crime.  Rather, *Foster* excised those portions of Ohio's sentencing statute that required judicial findings of fact before a court could sentence a defendant to more than a minimum sentence or to consecutive sentences. *Bouie* does not prohibit this.

Second, Coles' position is foreclosed in part by *Dobbert v. Florida*, 432 U.S. 282 (1977).  Coles contends that Ohio may not sentence him pursuant to a statute that it modified after Coles' criminal conduct because this fails to give his fair warning of his potential punishment.  As the Eleventh Circuit first pointed out in *United States v. Duncan*, 400 F.3d 1297 (11th Cir. 2006), *Dobbert* contradicts this proposition:

> Whether or not the old statute would in the future, withstand constitutional attack, it clearly indicated Florida's view of the severity of murder and of the degree of punishment which the legislature wished to impose upon murderers.  The statute was intended to provide maximum deterrence, and its existence on the statute books provided fair warning as to the degree of culpability to which the State

ascribed to the act of murder.

*Duncan*, 400 F.3d at 1307-08.  Similarly, although Ohio's sentencing statutes at the time of Coles' criminal acts were unconstitutional, they nevertheless gave him fair notice of the acts that were prohibited and the degree of punishment which the Ohio legislature wished to impose on those who committed those acts.  As the reinterpreted statute did not increase the maximum penalty to which Coles was potentially subject, Coles cannot say that the state failed to give fair warning of the prohibited conduct or the maximum potential penalties for his offense.

Third, Coles' position is contradicted by *United States v. Booker*, 543 U.S. 220 (2005), and its progeny.  In *Booker*, the Supreme Court confronted the constitutionality of a federal sentencing statute that resembled Ohio's insofar as it required specified judicial findings of fact for upward departures from a base sentence.  The Court found that such mandatory factfinding violated the holding in *Apprendi,* and excised those portions of the statute requiring judicial factfinding before increasing a base sentence. The Supreme Court also allowed sentencing courts to use the previously-mandatory sentencing factors as guidelines that should be considered in sentencing.  The Court required other federal courts to apply both parts of its holding--striking the mandatory findings on Sixth Amendment grounds and using the previously-mandatory factors as guidelines--to future cases because applying both holdings in combination best approximated the will of Congress in enacting sentencing reform.  *Id.* at 249.  Finally, the Court struck those sections of the statute requiring a relatively strict appellate review for departures from mandatory sentencing guidelines and found that the resulting statute implied appellate review under a "reasonableness" standard.  *Id.* at 259-60.

-43-

When the Ohio Supreme Court determined that Ohio's sentencing statutes violated the holding in *Blakely v. Washington*, 542 U.S. 296 (2004), it explicitly turned to *Booker* to cure the statutes' unconstitutionality.  *Foster*, 109 Ohio St. 3d at 26-27, 845 N.E.2d at 495-96.  Thus, the Ohio Supreme Court excised those portions of the statutes requiring judicial factfinding using certain factors before making upward departures from a base sentence or before sentencing to consecutive sentences.  *Id.*, 109 Ohio St. 3d at 28-30, 845 N.E.2d at 497-98.  It also instructed Ohio courts to use the factors enumerated in the statutes as guidelines in making sentencing determinations.  *Id.*, 109 Ohio St. 3d at 30, 845 N.E.2d at 498.  Sentencing courts were thus free to sentence defendants anywhere within the sentencing ranges set by the Ohio legislature for various crimes or to consecutive sentences, using the previously-mandatory factors as guidelines to determine where in the range a defendant should be sentenced.  The resulting statutes, according to the Ohio Supreme Court, best approximated the will of the legislature in passing the sentencing statutes while doing away with the statutes' unconstitutionality.  *Id.*

Fourth, although the Sixth Circuit has not ruled on the overall constitutionality of imposing sentences pursuant to *Foster* on defendants whose criminal conduct occurred prior to *Foster's* restructuring of Ohio sentencing laws, it has found that sentencing such defendants to consecutive sentences pursuant to *Foster* does not violate the *Ex Post Facto* or Due Process Clauses.  *Hooks v. Sheets*, 603 F.3d 316, 320-21 (6th Cir. 2010).  The court's reasoning in *Hooks* parallels the reasoning in *Dobbert* and supports the proposition that a non-minimum sentence imposed on such defendants pursuant to *Foster* also would not violate the *Ex Post Facto* or Due Process Clauses.

-44-

A number of federal defendants have alleged that the federal sentencing statutes reshaped by *Booker* violate due process because they subject defendants to *ex post facto* laws.  Those challenges have been universally rejected.  *See United States v. Scroggins*, 411 F.3d 572, 575-78 (5th Cir. 2005); *United States v. Jamison*, 416 F.3d 538, 539 (7th Cir. 2005); *United States v. Dupas*, 417 F.3d 1064, 1068-69 (9th Cir. 2005); *United States v. Rines*, 419 F.3d 1104, 1106 (10th Cir. 2006); *Duncan*, 400 F.3d at 1306-08; and *United States v. Alston-Graves*, 435 F.3d 331, 343 (D.C. Cir. 2006).  Coles makes no argument that distinguishes in any relevant respect Ohio's revised sentencing statutes from the revised federal sentencing statutes upheld by the appellate courts.

Because Coles' sentence did not violate due process or the prohibition against *ex post facto* laws, Coles' fifth ground for relief should be dismissed.

E.	*Ground six:  The trial court's failure to make findings and reasons sufficient to justify his sentence violated Coles' right to due process*

Coles' sixth ground for relief asserts that Ohio Rev. Code § 2929.14(e)(4) ("§ 2929.14(e)(4)") required the trial court to make findings sufficient to justify his consecutive sentences.  The trial court's failure to do so, according to Coles, violated his right to due process, as specified by the Supreme Court's holding in *Oregon v. Ice*, 555 U.S. 160, 129 S.Ct. 711 (2009).  Respondent denies that *Ice* applies in the instant case because *Foster* eliminated the requirement that trial courts make findings before imposing consecutive sentences.

*Ice* held that the Sixth Amendment did not prohibit the states from requiring that judges engage in factfinding before imposing consecutive sentences.  *Foster* found the

-45-

requirement for judicial factfinding in § 2929.14(e)(4) before imposing consecutive sentences to be unconstitutional in light of *Blakely*. *Foster,* 109 Ohio St.3d at 20-22, 25, 845 N.E.2d at 490-91, 494.  Consequently, the court severed that provision from the Ohio sentencing statutes.  *Id.*, 109 Ohio St.3d at 29, 845 N.E.2d at 497.  After severance, the Ohio Supreme Court found that judicial factfinding was no longer required for courts to sentence defendants to consecutive terms.  *Id.*, 109 Ohio St.3d at 29-30, 845 N.E.2d at 498.

Coles argues that because the Ohio Supreme Court improperly found § 2929.14(e)(4) to be unconstitutional, *Foster* improperly severed that provision from the Ohio sentencing statutes.  According to Coles, his sentencing should have included findings of fact before he was sentenced to consecutive sentences.  Because it did not, his sentencing violated § 2929.14(e)(4) and his right to due process.

This court need not determine whether Coles' argument that *Foster's* severance of § 2929.14(e)(4) was improper.  Even if Coles is correct that the severance was improper and that the trial court should have engaged in judicial factfinding before imposing consecutive sentences, Coles does not demonstrate that the trial court's failure to engage in the supposedly-required factfinding violated due process.  In reviewing the decision of state courts, this court does not consider questions of state law:

> "[F]ederal habeas corpus relief does not lie for errors of state law."  *Lewis v. Jeffers,* 497 U.S. 764 (1990);  see also *Pulley v. Harris,* 465 U.S. 37, 41 (1984). . . .  [I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.

-46-

*Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Thus, whether the trial court erred under state law by failing to engage in judicial factfinding before sentencing Coles to consecutive sentences, by itself, is a question beyond the jurisdiction of this court. Coles cites no holding of the Supreme Court that the trial court's failure to engage in such factfinding violated his right to due process, nor does this court know of any such holding. Without such a holding, the propriety of Coles' consecutive sentences is a matter of state law properly adjudicated in the state courts.

For the reasons given above, Coles' sixth ground for relief should be dismissed.

IV.

For the reasons given above, Coles' third ground for relief, alleging a due process violation because of unfairly prejudicial evidence improperly admitted at trial, should be dismissed as procedurally defaulted. Coles' second, fourth, fifth, and sixth grounds for relief should be dismissed as without merit. Coles' first ground for relief has some merit in that the charges and evidence only provide adequate due process notice on six counts of rape, not 43 counts. Accordingly, the state of Ohio should vacate 37 counts of rape, or this court should grant the writ.

Date: August 19, 2011                              s/ *Nancy A. Vecchiarelli*
                                                   United States Magistrate Judge

## OBJECTIONS
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**

-47-